CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**JUN 2 0 2012**

JULIA C. DUDLEY, CLERK
BY: ~~~~~~~~
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 7:11-cv-00441 |
| WESTERN VIRGINIA WATER AUTHORITY, | ) ) ) | |
| Defendant/Third-party Plaintiff | ) ) | **MEMORANDUM OPINION** |
| v. | ) ) | |
| FIRST STATE BANK | ) ) | By: Hon. Glen E. Conrad |
| and | ) ) | Chief United States District Judge |
| CARNELL CONSTRUCTION CORPORATION, | ) ) ) | |
| Third-party Defendants. | ) | |

This case arises out of the contractual relationships between four separate entities who were all involved in a construction project at the Falling Creek Dam in Bedford County, Virginia. In essence, the construction project's general contractor failed to pay one of its subcontractors, thereby triggering its surety's duty to pay the subcontractor, which, in turn, resulted in the involuntary assignment to the surety of the general contractor's interest in an escrow account. This involuntary assignment entitled the surety to receive the unpaid balance on the completed project. However, the surety was never paid the full amount it was owed and, in turn, sued the entity that received the construction services and that was obligated to pay for those services upon the project's completion. That entity, in turn, filed a third-party complaint, bringing into the case the general contractor and the bank acting as escrow agent. Before the court now are the escrow agent's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Also before the court is the third-party plaintiff's motion to deny or to defer consideration of the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(d).  For the reasons set forth below, the court will grant in part and deny in part the motion for summary judgment and the motion to dismiss, and will grant the Rule 56(d) motion.

## I.   Factual and Procedural Background

International Fidelity Insurance Company ("IFIC"), the plaintiff in this action, is a surety company organized under the laws of New Jersey with a place of business in Newark, New Jersey.  (Docket No. 1 at 1.)  Western Virginia Water Authority ("the Authority"), the defendant and third-party plaintiff in this action, is an incorporated public service authority organized under Virginia Code § 15.2-5100 et seq., with its principal place of business in Roanoke, Virginia.  (Docket No. 21 at 2.)  First State Bank ("First State"), one of the third-party defendants, is a banking corporation organized under the laws of Virginia with its principal place of business in Danville, Virginia.  (Id.)  Carnell Construction Corporation ("Carnell"), the other third-party defendant, is a corporation organized under the laws of Virginia with its principal place of business in Martinsville, Virginia.  (Id.)

According to the Authority's amended third-party complaint, the Authority entered into a contract with Carnell ("Contract") on May 4, 2009 for construction and grading work on the Falling Creek Dam Renovation ("Project").  (Id. at 3.)  The Contract obligates the Authority to pay to Carnell the remaining contract balance upon completion of the Project.  The Authority, Carnell, and First State also entered into an escrow agreement ("Escrow Agreement") with respect to the Contract.  (Id.)  IFIC signed the Escrow Agreement as surety for Carnell.  (Id.)  The Escrow Agreement provides that the Authority from time to time would pay into the escrow account amounts it had retained under the Contract, and that First State, as the escrow agent, would pay at the direction of the Authority the principal of the escrow account, or any specified

2

amounts thereof, to the Authority or to Carnell.  (Id.; Docket No. 4-1, Ex. B.)  More specifically, the Escrow Agreement provides:

> Payments should be made to First State Bank and mailed to P.O. Box 6400[,] Danville, Va. 24543-6400. . . .  Upon receipt of checks drawn by the Authority and made payable to [First State] as escrow agent, [First State] shall promptly notify [Carnell], negotiate the same and deposit or invest and reinvest the proceeds in approved securities in accordance with the written instructions of [Carnell].

(Docket No. 4-1, Ex. B.)

The Authority alleges that it paid a five percent retainage amount in the escrow account each time Carnell submitted a payment request, resulting in a total balance in the escrow account of $85,823.33.  However, it appears that, unbeknownst to the Authority, First State did not establish the escrow account.  First State asserts, and the Authority does not contest (Docket No. 35 at 2), that the only relevant checks that it received from the Authority were made payable to "Carnell Construction Corporation."  (Docket No. 25-1.)  The checks were sent to "Carnell Construction Corporation c/o First State Bank" at the address for First State provided in the Escrow Agreement.  (Docket No. 35 at 2; Docket Nos. 35-1, 35-2, 35-3.)  Attached to each check was a check stub that provided information about the payment.  The "description" portion of the check stubs included the word "escrow" or "retainage" or some version of the word "retain."  (Docket Nos. 35-1, 35-2, 35-3.)  First State did not receive from the Authority any checks made payable to First State as escrow agent—in other words, none of the checks that First State received from the Authority satisfied the terms of the Escrow Agreement.  When First State received these checks from the Authority, First State deposited them into the separate business savings account of Carnell, which had been a long-time banking customer of First State. (Docket No. 25-1 at 3.)

On June 14, 2011, Carnell completed the Project.  (Docket No. 21 at 4.)  According to the amended third-party complaint, IFIC (in its role as surety for Carnell) received and paid a

3

payment bond claim from one of Carnell's subcontractors.  (Id.)  According to an indemnity agreement between IFIC and Carnell, Carnell's failure to make payment to its subcontractor resulted in the assignment to IFIC of all of Carnell's rights "in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any matter out of the Bonds." (Docket No. 1-4 at 3.)  Based on this involuntary assignment,[1] IFIC argues in its complaint that it is the proper party to receive the outstanding balance of $85,823.33 under the Contract.[2]  (Docket No. 1.)  Accordingly, IFIC contacted the Authority to request that the Authority pay the remaining contract balance due on the Project directly to IFIC.  (Docket No. 21 at 4.)  Then, the Authority advised Carnell in a June 14, 2011 letter that it had received a subrogation claim from IFIC, explaining to Carnell that it intended to pay the remaining balance due on the Project to IFIC (including the $85,823.33 supposedly being held in escrow).  (Id.)  Carnell indicated its agreement with this proposal by signing and returning to the Authority a copy of the June 14 letter.  (Id.; Docket No. 4-1, Ex. A.)

Thereafter, on July 27, the Authority directed First State to release to IFIC the funds that the Authority believed were being held in the escrow account.  (Docket No. 21 at 4; Docket No. 4-1, Ex. C.)  However, First State did not, and indeed could not, comply with this direction, inasmuch as it is undisputed that, upon receiving the checks, First State placed the checks directly into Carnell's separate account without first establishing an escrow account.  (Docket No. 21 at 4.)  After its letter to First State directing the release of the escrow funds to IFIC and after First State's alleged refusal to release the escrow funds, the Authority issued a check to

---

[1]     The Escrow Agreement provides that Carnell would not assign its interest in the escrow account except to IFIC, its surety. (Docket No. 4-1, Ex. B.)
[2]     In addition to its reliance on the contractual assignment as a basis on which to demand payment from the Authority, IFIC notes in its complaint the existence of a separate contractual relationship between IFIC and the Authority arising out of a labor and material payment bond ("Bond") that IFIC issued on behalf of Carnell. (Docket No. 1-3.)  The Authority, in addition to IFIC and Carnell, was also a party to the Bond.

4

IFIC in the amount of $33,865.98, leaving the remaining balance due on the Project at $85,823.33, the amount that it paid into the escrow account.  (Id.)

On September 14, 2011, IFIC filed its complaint, seeking to recover from the Authority the unpaid balance on the Project. (Docket No. 1.) Thereafter, on October 26, 2011, the Authority filed a third-party complaint (Docket No. 6) and on December 29, 2011, an amended third-party complaint, seeking to hold both First State and Carnell liable as third-party defendants for the unpaid balance on the Project.  (Docket No. 21.) The Authority brings six causes of action in its amended third-party complaint—a common law indemnification claim against First State and Carnell, a breach of contract claim against First State, a breach of fiduciary duty claim against First State, an unjust enrichment claim against First State, a separate unjust enrichment claim against Carnell, and a declaratory relief claim.

On January 11, 2012, First State filed a Rule 12(b)(6) motion to dismiss the amended third-party complaint, arguing that its duty as escrow agent was not triggered because it did not receive from the Authority checks made payable to First State as escrow agent, as required by the Escrow Agreement. (Docket No. 25.) Thereafter, on February 6, 2012, First State filed a motion for summary judgment based on the same contention advanced in its motion to dismiss. (Docket No. 30.) The Authority then filed on February 21, 2012 a motion pursuant to Rule 56(d), requesting that the court either deny the motion for summary judgment or defer consideration of the motion to allow the parties to engage in discovery.  (Docket No. 33.)

The court heard argument on the motions on April 9, 2012.  At the hearing, the Authority requested that the court permit the parties to engage in discovery on the issue of whether First State knew or should have known that any checks received from the Authority were intended to be held in escrow and whether First State knew or should have known that it was obligated to establish an escrow account and that it had a fiduciary duty to place the Authority's payments

into that escrow account. The court then issued an order directing both the Authority and First State to "file briefs addressing Virginia law on the issue of whether First State Bank's duty as escrow agent under the Escrow Agreement could be triggered by constructive notice that the checks drawn by Western Virginia Water Authority, made payable to Carnell Construction Corporation, and mailed to First State Bank were intended to be placed in escrow." (Docket No. 43.) After considering the briefs filed by both parties and the applicable case law, the court concludes as a matter of law that First State is entitled to summary judgment on the Authority's "constructive notice" theory of recovery. The court will permit the Authority to engage in discovery in support of its "actual notice" argument.

II.     **Discussion**

    A.     **Standard of Review**

In considering a motion for summary judgment[3] under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact that avoids summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[3]    Because both the Authority and First State presented materials outside the pleadings, First State's motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). As such, the court must consider the motion to dismiss under the same standard that applies to a motion for summary judgment.

### B.      Analysis

#### 1.      Constructive notice

##### a.      Breach of contract claim

As stated above, the Authority alleges that First State breached the Escrow Agreement by failing to establish an escrow account, failing to place the funds received from the Authority into that escrow account, and depositing the funds instead into Carnell's separate account.

"[I]n an escrow arrangement, the parties occupy a principal-agent relationship, a relationship which is essentially contractual in nature." Winslow, Inc. v. Scaife, 254 S.E.2d 58, 60 (Va. 1979). The contractual duty of an escrow agent is narrowly defined by the terms of the escrow agreement.[4] See 28 Am. Jur. 2d Escrow § 22 (1966) ("The duty of an escrow agent is . . . . limited to compliance with the parties' instructions. In other words, the escrow agent's duty is limited by the terms of the escrow agreement; the escrowee owes a duty to act only in accordance with the escrow instructions." (footnotes omitted)); 30A C.J.S. Escrows § 17 (2010) ("An escrow agent's duties are strictly limited to those set forth in the agreement. The agency created by an escrow is limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. . . . The escrow agent owes the parties a duty to carry out the terms of the agreement as intended by the parties." (footnote omitted)); see also Davis v. Holsten, 621 S.E.2d 101, 104–05 (Va. 2005) (stating that an escrow agreement is a contract, the terms of which must be strictly construed).

---

[4]      The court notes that the laws of other jurisdictions are to the same effect. See, e.g., Donell v. Fid. Nat'l Title Agency of Nev., Inc., No. 2:07-CV-00001-KJD, 2012 WL 1669421, at *4 (D. Nev. May 11, 2012) ("In an escrow transaction, the escrow instructions control the parties' rights and define the escrow agent's duties."); Schoepe v. Zions First Nat'l Bank, 750 F. Supp. 1084, 1088 (D. Utah 1990) ("[T]he scope of the escrow agent's duty is governed by the escrow agreement . . . ."); Curran v. Eberharter, 521 A.2d 474, 479 (Pa. Super. Ct. 1987) ("[A]n escrow agent is bound to follow the terms of the escrow agreement. . . . Further, the powers of an escrow agent are limited to those enumerated in the escrow agreement."); Pippin v. Kern-Ward Bldg. Co., 456 N.E.2d 1235, 1237 (Ohio Ct. App. 1982) ("The duty of the escrow agent is therefore clear—to carry out the terms of the agreement as intended by the parties.").

Because an escrow agreement creates a principal-agent relationship, certain fiduciary duties that normally accompany principal-agent relationships also apply within the context of escrow arrangements. See Rossmann v. Lazarus, No. 1:08cv316 (JCC), 2008 WL 4642213, at *7 (E.D. Va. Oct. 15, 2008) (noting that Virginia law recognizes a fiduciary relationship between an agent and principal). More specifically, an escrow agent owes to its principals a fiduciary duty to execute its contractual obligations with "scrupulous honesty, skill, and diligence." See 30A C.J.S. Escrows, supra, § 17 ("It is a[n escrow] depositary's duty to exercise reasonable skill and ordinary diligence, and due care in his or her employment. In this fiduciary capacity, the depositary must conduct the affairs with which he or she is entrusted with scrupulous honesty, skill, and diligence." (footnotes omitted)); 28 Am. Jur. 2d Escrow, supra, § 23 ("Escrow agents . . . owe a fiduciary duty . . . to perform their responsibilities with scrupulous honesty, reasonable skill, and ordinary diligence. . . . However, the fiduciary relationship of an escrow agent and the other parties to the agreement is much narrower in scope than other fiduciary relationships such as attorney and client."); see also H-B Ltd. P'ship v. Wimmer, 257 S.E.2d 770, 773 (Va. 1979) ("An agent is a fiduciary with respect to the matters within the scope of his agency. A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence."); Restatement (Third) of Agency § 8.07 (2006) ("An agent has a duty to act in accordance with the express and implied terms of any contract between the agent and the principal."); id. § 8.08 ("Subject to any agreement with the principal, an agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents in similar circumstances.").

In the instant case, the Escrow Agreement (which, by its own language, "sets forth the terms of the escrow") clearly provides that First State's duty to deposit checks into escrow was

triggered only "[u]pon receipt of checks drawn by the Authority and made payable to it as escrow agent." (Docket No. 4-1, Ex. B (emphasis added).)  As stated above, the Authority does not contest that First State did not receive checks that were made payable to First State as escrow agent.  Instead, the checks were made payable to Carnell.  Hence, because First State's duties as escrow agent were defined by the terms of the Escrow Agreement, and because First State did not receive checks that complied with those terms, First State's duties as escrow agent were not triggered by receipt of the checks, barring any actual notice by First State of the Authority's mistake.

Notwithstanding the terms of the Escrow Agreement to which it assented, the Authority nonetheless argues that First State should have known that the checks were intended to be placed in escrow.  According to the Authority, First State was constructively notified that the checks were intended for the escrow account based upon the fact that the checks were mailed to Carnell "c/o First State Bank" at the address for First State specified in the Escrow Agreement and based upon the fact that the checks featured stubs with escrow- or retainage-related words.  However, the cases to which the Authority cites in support of this argument stand for the proposition that a bank may be placed on constructive notice of fraudulent conduct.  See First Am. Bank of Va. v. Dole, 763 F.2d 644, 650 (4th Cir. 1985); Cory Mann George Corp. v. Old, 23 F.2d 803, 810 (4th Cir. 1928); W.L. Chase & Co. v. Norfolk Nat'l Bank of Commerce & Trusts, 145 S.E. 725, 728 (Va. 1928).  The Authority itself avers that the instant case involves no allegations of fraud. (Docket No. 46 at 4.)  Hence, the court believes that the cases cited by the Authority fail to inform on the issue of whether Virginia law permits a bank's contractual duties as escrow agent to be activated by constructive notice that checks not in compliance with an escrow contract were nonetheless intended for escrow.

Furthermore, the Authority's constructive notice argument is undermined by the rule that, generally, the law does not impose a duty on a financial institution to make inquiry as to notations made on instruments received by that institution.  See 5A Ronald A. Anderson, Anderson on the Uniform Commercial Code § 3-105:31 (3d ed. 1998) ("[M]emoranda on checks describing the funds and the source from which they come, or the payment intended by the checks, do not act as notifications to a bank or other person receiving, paying, or cashing such checks, of any facts which it is bound to investigate."); see also State Nat'l Bank of Springfield v. Dodge, 124 U.S. 333, 346 (1888) ("No bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit; and in such case, the memoranda and figures are not a notice to the bank that the particular check is to be paid only from a particular fund." (emphasis omitted)); United States ex rel. Westinghouse Elec. Corp. v. Sommer Corp., 580 F.2d 179, 184 (5th Cir. 1978) ("The general rule is that a bank upon which a check is drawn is not bound by notations or memoranda upon the margin of a check, such notations being considered as merely for the convenience of the drawer."); State Nat'l Bank v. Reilly, 14 N.E. 657, 661 (Ill. 1887) ("It is well known . . . that . . . the practice among banks, paying checks of their depositors, is not to observe memoranda upon such checks; but the custom is to regard them as having been made for the convenience of the drawers, and the practice in that regard, it is thought, has the sanction of the law in its support." (emphasis omitted)); Spinazzola v. Mfrs. Nat'l Bank of Detroit, 184 N.W.2d 265, 266 (Mich. Ct. App. 1970) (determining that a check made payable to "Benjamin Bagozzi" and featuring a notation in the upper left corner reading "To be held in escrow" did not place the bank on notice not to cash the check); First Nat'l Bank of Duluth v. Sch. Dist. No. 15 of Carlton Cnty., 217 N.W. 366, 367 (Minn. 1928) (stating that notations on a check did not "b[i]nd [the bank] or in any way affect[] its rights" and that "[s]uch notations on a check, as

10

between drawer and drawee, operate only to serve the convenience of the drawer"); Frost Nat'l Bank v. Nicholas & Barrera, 534 S.W.2d 927, 934–35 (Tex. Civ. App. 1976) (citing numerous authorities for the proposition that banks generally bear no obligation to investigate notations on checks, because such notations are presumed to be for the convenience of the drawer).

The potency of this principle is not diluted by the fact that First State functioned in the instant case as an escrow agent. In fact, the Escrow Agreement lends added force to the rule in this case—the Escrow Agreement provides that "[First State] shall not be deemed a party to, bound by, or required to inquire into the terms of, the contract or any other instrument or agreement between the Authority and [Carnell]." (Docket No. 4-1, Ex. B (emphasis added).) Any post-hoc attempt by the Authority to insert language into the contract regarding such a duty is unavailing. See Landsdowne Dev. Co. v. Xerox Realty Corp., 514 S.E.2d 157, 161 (Va. 1999) ("[W]e will not insert by construction, for the benefit of a party, a term not express in the contract."). Instead, "Virginia law construes . . . contract[s] strictly to effectuate the intentions of the parties, giving terms their plain meaning, and declining to read in an ambiguity or meaning the parties did not intend." Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 766, 773 (E.D. Va. 2011) (citing Floyd v. N. Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993)).

In fact, because Virginia law requires strict construction of contractual terms, First State, absent actual notice of the Authority's mistake, was prohibited by the Escrow Agreement from depositing into escrow the checks received from the Authority—the plain language of the contract authorized First State to place funds into escrow only when checks were drawn by the Authority and made payable to First State as escrow agent. See 30A C.J.S. Escrows, supra, § 17 ("As a general rule, a person who assumes and does act as the depositary in escrow is held to strict compliance with the terms of the escrow agreement and may not perform any acts with reference to handling the deposit or its disposal which are not authorized by the contract of

11

deposit."); id. ("However, while an escrow holder must comply strictly with the instructions of the parties . . . , an escrow holder has no general duty to police the affairs of its depositors."). Furthermore, not only was First State prohibited by the terms of the Escrow Agreement from placing the checks in escrow, but First State, absent actual notice of the Authority's mistake, was legally obligated to deposit the checks into the account of the named payee—Carnell, its customer. See Va. Code Ann. § 8.3A-413(a) (West 2012) ("The acceptor of a draft is obliged to pay the draft . . . according to its terms at the time it was accepted . . . ."); id. § 8.3A-109(b) ("A promise or order that is not payable to bearer is payable to order if it is payable (i) to the order of an identified person or (ii) to an identified person or order. A promise or order that is payable to order is payable to the identified person."); see also Cocke's Adm'r v. Loyall, 143 S.E. 881, 883 (Va. 1928) ("The banker cannot excuse his disobedience to his customer's orders, in the due course of business, by setting up that he knew, or had reason to believe, that the customer's order was given in promotion of an unlawful purpose.").

In short, the mere receipt of the checks from the Authority did not trigger First State's contractual duties as escrow agent under the terms of the Escrow Agreement. Furthermore, for the reasons stated above, no amount of discovery into the issue of constructive notice would prove legally significant in this case. Thus, the court will grant First State's motion for summary judgment and motion to dismiss as to the breach of contract claim insofar as the contract claim relies on constructive notice as a basis for First State's liability.

### b.    Breach of fiduciary duty claim

The Authority correctly asserts that "the same facts supporting a claim for breach of contract may support a tortious breach of fiduciary duty claim as well, so long as the latter duty arises out of the common law rather than the contract." Scott v. Branch Banking & Trust Co., 588 F. Supp. 2d 667, 677 (W.D. Va. 2008), aff'd, 332 F. App'x 112 (4th Cir. 2009). The

Authority contends that an escrow agent's fiduciary duties arise out of the common law based upon the principal-agent relationship established by an escrow arrangement. Furthermore, the Authority argues that First State breached its alleged common law fiduciary duty to exercise reasonable care and skill by failing to inquire further into the intended destination of the checks based on the address to which the checks were sent and based on the memoranda on the attached stubs. In contrast, First State argues that its duties to the Authority flowed entirely from the Escrow Agreement.

As discussed above, an escrow agent owes fiduciary duties to its principals. However, whether those fiduciary duties spring from the common law, from the contract, or from a combination of the two, is a question that proves immaterial in this case.[5] Not only are the fiduciary duties associated with escrow arrangements "much narrower in scope than [the duties in] other fiduciary relationships such as attorney and client," 28 Am. Jur. 2d Escrow, supra, § 23, but the parties to an escrow agreement may further limit those fiduciary duties through a contractual provision to that effect. Rayder v. Wachovia Bank, 72 Va. Cir. 1, 1 (Va. Cir. Ct. 2006); see also Legard v. EQT Prod. Co., No. 1:10cv00041, 2011 WL 86598, at *13 (W.D. Va. Jan. 11, 2011) ("When the parties' relationship is entirely defined by contract, and the contract imposes no fiduciary duty, none exists." (citing Rossman, 2008 WL 4642213, at *7)); Restatement (Third) of Agency, supra, § 8.08 cmt. b ("A contract may also, in appropriate circumstances, raise or lower the standard of performance to be expected of an agent . . . ."). Furthermore, the court notes that imposing a common law duty on banks to scrutinize check stubs for relics of the drawer's intent as to the nature of the check would wreak havoc on the

---

[5]      However, the court notes that, because an escrow arrangement creates a contractual principal-agent relationship, Winslow, 254 S.E.2d at 60, an escrow agent's fiduciary duties arguably arise solely from a contract and not from the common law. See Legard v. EQT Prod. Co., No. 1:10cv00041, 2011 WL 86598, at *13 (W.D. Va. Jan. 11, 2011) ("Fiduciary duties can arise either from a contractual provision or through a common law duty . . . . When the parties' relationship is entirely defined by contract, and the contract imposes no fiduciary duty, none exists." (citing Foreign Mission Bd. of S. Baptist Convention v. Wade, 409 S.E.2d 144, 148 (Va. 1991), and Rossman, 2008 WL 4642213, at *7)).

13

banking industry—especially when, as in the instant case, a bank has been relieved of such a duty by the express terms of an escrow contract.  See Bernardini v. Cent. Nat'l Bank of Richmond, 290 S.E.2d 863, 864–65 (Va. 1982) (noting the "impossible burden on the Commonwealth's banking system" that would be caused by requiring banks to inquire into the source of each deposit regardless of whether checks were designated for a special purpose); Cocke's Adm'r, 143 S.E. at 882–83 (noting the "unreasonable" and "unbearable" burden that would be imposed on banks if they were required to make inquiry each time certain words appeared on a check).  For these reasons, the court will grant First State's motion for summary judgment and motion to dismiss as to the breach of fiduciary duty claim insofar as this claim relies on constructive notice as a basis for First State's liability.

<strong>c.      Remaining claims</strong>

The Authority also brings against First State claims for indemnification, unjust enrichment, and declaratory relief.  Because all of these remaining counts are premised on First State's alleged breach of the Escrow Agreement or on its alleged breach of a fiduciary duty, the court will grant the motion for summary judgment and the motion to dismiss as to these claims, pursuant to its rulings above, insofar as these remaining claims rely on constructive notice as a basis for First State's liability.

<strong>2.      Actual knowledge</strong>

Notwithstanding the above analysis regarding the legal futility of the Authority's constructive notice argument, the court believes that the Authority is entitled to conduct discovery on the narrow issue of whether First State had actual knowledge that the checks drawn by the Authority, made payable to Carnell, and mailed to First State, were for the escrow account.  First State acknowledges that it may be held liable in this case if it had actual notice of the Authority's mistake in making the checks payable to Carnell, instead of to First State as

14

escrow agent.  E.g., Bernardini v. Cent. Nat'l Bank of Richmond, 290 S.E.2d 863, 864 (Va. 1982); Peoples Nat'l Bank v. Coleman, 9 S.E.2d 333, 335 (Va. 1940).  The Authority advises the court that it believes that it could show through discovery that First State had actual knowledge that the checks at issue in this case (especially the checks featuring stubs with escrow- or retainage-related words) were intended for the escrow account.  Based on this representation to the court, the court believes that the Authority should be permitted to conduct discovery into the issue of actual knowledge.  However, the court is constrained to advise that the mere notation on check stubs of escrow- or retainage-related words, by itself, is insufficient as a matter of law to establish actual notice on the part of First State.  Instead, the Authority must produce additional objective evidence suggesting that First State, or its agents or employees, actually knew that those checks were intended for the escrow account and that the checks fell within the ambit of the Escrow Agreement.[6]  Hence, at this stage in the case, the court will deny First State's motion for summary judgment and motion to dismiss insofar as the Authority's claims rely on actual knowledge as a basis for First State's liability.  Accordingly, the court will grant the Authority's Rule 56(d) motion as to the narrow issue of actual knowledge.

## III.    Conclusion

For the reasons presented above, the court will grant in part and deny in part First State's motion for summary judgment and motion to dismiss, and will grant the Authority's Rule 56(d) motion.

The Clerk is directed to send certified copies of this order to all counsel of record.

**ENTER**: This _20th_ day of June, 2012.

_Glenn Conrad_
_____
Chief United States District Judge

---

[6]    The court notes that if, after conducting discovery, the Authority fails to uncover such evidence of actual knowledge, its claims against First State may properly be the subject of a renewed motion for summary judgment.

15