CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 3 0 2012

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, <br><br> Plaintiff <br><br> v. <br><br> WESTERN VIRGINIA WATER AUTHORITY, <br><br> Defendant/Third-party Plaintiff <br><br> v. <br><br> FIRST STATE BANK <br><br> and <br><br> CARNELL CONSTRUCTION CORPORATION, <br><br> Third-party Defendants. | Civil Action No. 7:11-cv-00441 <br><br><br> **MEMORANDUM OPINION** <br><br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

Western Virginia Water Authority ("Authority"), the defendant and third-party plaintiff in this case, filed a complaint against First State Bank ("First State") and Carnell Construction Corporation ("Carnell"), alleging claims of common law indemnification and unjust enrichment, and seeking declaratory judgment in its favor. Currently before the court is the Authority's motion for summary judgment against Carnell. For the reasons that follow, the court will grant in part and deny in part the motion.

I.  **Factual and Procedural Background**

This case arises from a multi-party contractual dispute over a construction project on the Falling Creek Dam in Bedford, Virginia ("Project"). The court has already issued two

memorandum opinions in the case detailing the facts and outlining the nature of the disputes. The following facts are those most relevant to the Authority's claim against Carnell.

The Authority entered into a contract ("Contract") with Carnell for grading and site work on the Project. As part of the Contract, the Authority was to retain 5% of the amount requested on each payment application submitted by Carnell. The applications acknowledged that the Authority had retained 5% of all previous payments, and that 5% of the current request would also be retained. (Docket No. 50-1, Ex. 1.)

Between September 2009 and December 2010, the Authority forwarded fourteen checks for the 5% retainage to First State, intending that they be deposited in an escrow account, as provided for in an escrow agreement between the parties. However, the checks did not clearly indicate that they should be retained in a separate account. As a result, the checks were deposited in Carnell's business savings account with First State.

International Fidelity Insurance Company ("IFIC") had previously entered into a bond agreement with Carnell to satisfy any valid claims that Carnell's subcontractors might assert in the event Carnell failed to pay for materials or labor provided on the Project. The bond was a condition of the Contract between Carnell and the Authority, and was expressly made part of the Contract.

Prior to the completion of the Project, one of Carnell's subcontractors, Ferguson Enterprises, made a claim against the bond as a result of Carnell's failure to pay Ferguson for materials provided to the Project. Acting as surety, IFIC paid Ferguson $286,571.44 to settle the claim.

After IFIC notified the Authority that it had paid Ferguson's claim against the bond, it requested that the Authority pay to IFIC all remaining funds due to Carnell under the Contract,

including the retainage amount. On June 14, 2011, Carnell agreed in writing that IFIC should receive the remainder of the Contract balance—$33,865.98—as well as the $85,823.33 that was supposedly being held in retainage with First State. The Authority paid IFIC the $33,865.98 remaining on the Contract, and directed First State to release the retainage to IFIC.

Only some time later, after the institution of IFIC's suit, did the Authority learn that First State had never established an escrow account. The Authority alleges that Carnell, in the June 14, 2011 letter, as well as in numerous conversations between representatives of the parties, never indicated that it had been receiving the retainage checks all along.

In its suit against the Authority, IFIC sought to recover the retainage sum, alleging that, as surety, it was both assignee and subrogee of Carnell's remaining rights in the Contract. This court agreed, and ordered the Authority to pay IFIC the $85,823.33 that should have been retained in escrow.[1] The Authority now asks the court to order Carnell to indemnify the Authority for its $85,823.33 liability to IFIC, or to order Carnell to disgorge that amount to the Authority under a claim of unjust enrichment. The Authority also seeks declaratory relief, in the form of an order stating that the Authority is not liable to IFIC for any unpaid portion of the contract balance. In reply, Carnell's counsel filed a brief statement indicating that its client intends to make no substantive response to the motion, nor take any further steps to defend itself in the litigation.

## II. Discussion

### A. Standard of Review

At the summary judgment stage, the court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 251-53

---

[1] The court rejected IFIC's claim that it was entitled to reimbursement of the $286,571.44 it paid to Ferguson.
3

(1986). Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact . . . ." Fed. R. Civ. Pro. 56(c).

**B.     Analysis**

    **i.     Indemnification**

In Count One of the amended third-party complaint, the Authority alleges a common law indemnification claim against Carnell. In broad terms, indemnity is "'[a] duty to make good any loss, damage, or liability incurred by another,'" as well as "'the right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty.'" Hanover Ins. Co. v. Corrpro Companies, Inc., 312 F. Supp. 2d 816, 821 (E.D. Va. 2003) (quoting Black's Law Dictionary 772 (7th ed. 1999)). "There are two types of indemnity: '[e]xpress indemnity, based on a written agreement, and implied indemnity, arising out of the relationship of the parties.'" Id. (quoting 9B Michie's Jurisprudence, Indemnity, § 2, at 487 (1995)). Virginia law recognizes a cause of action based on implied indemnity. Stone Ridge Condominium Unit Owners' Association v. J.M. Turner and Company, Inc., 2003 WL 22052179, at *1 (Va. Cir. Ct. July 14, 2003 (citing Virginia Elec. & Power Co. v. Wilson, 221 Va. 979, 981-82 (1981)). Implied indemnification must, however, arise from an underlying contractual relationship between the parties. Virginia Elec. & Power Co., 221 Va. at 981-82. Even when a contractual relationship exists, "implied right[s] to indemnity may be read into . . . contracts[] only [when] unique factors or a special relationship between the parties give rise to such a right." TransDulles Ctr. Inc. v. USX Corp., 976 F2d 219, 228 (4th Cir. 1992).

The Supreme Court of the United States has addressed certain instances where a unique relationship between two parties supplied a right to indemnification not expressly stated in the

4

parties' contract. For example, in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 232 (1956),[2] a stevedore was injured while unloading a ship as a result of negligent work done by the stevedoring company at a previous port. The stevedore successfully sued the shipowner for his injuries. The shipowner, who held the right to inspect and reject the loading work done by the stevedoring company, sued the company seeking indemnity for its judgment liability. The Court held that the shipowner was entitled to indemnification because of the stevedoring company's "obligation *owing to the shipowner* to store the cargo in a reasonably safe manner." Id. at 133 (italics in original). The Court found that the right to indemnity sought by the shipowner arose from the essence of the contract itself, and the parties' stated obligations under that contract. Id. The Court also held that the stevedoring company, "as the warrantor of its own service, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense." Id. at 134-35.

The Fourth Circuit, applying Virginia law, has also found an implied right of indemnification in certain circumstances. In General Electric Co. v. Moretz, 270 F.2d 780 (4th Cir. 1959), the Court ordered a common carrier to indemnify a shipping company for liability owed to an injured truck driver. The Court found that the special nature of the shipping industry, and the incorporation of federal statutes and regulations into shipping contracts sufficed to create the unique factors necessary to find an implied right of indemnification.

More recently, however, the Fourth Circuit has rejected claims based on implied indemnification, noting the lack of a special relationship or unique factors. In TransDulles Center, Inc. v. Bd. of Supervisors of Loudon County, 976 F.2d 219, 228 (4th Cir. 1992), the Court held that an architect's obligation to satisfy local building codes did not give a contractor

---

[2] The result in Ryan was overruled by the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972. See 33 U.S.C. § 905 (1982); see also Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 198 (1983).

5

Case 7:11-cv-00441-GEC Document 70 Filed 10/30/12 Page 5 of 10 Pageid#: 768

an implied right of indemnification to attorney's fees in a suit where the contractor was found liable to the project owner. Id. at 228. The Court held that the agreement between the architect and the contractor was simply an ordinary services contract that could not have anticipated a condition of indemnification. Id. Similarly, in International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124, 126 (4th Cir. 1988), the Fourth Circuit held that implied indemnification was not justified when an insurance carrier sued an insurance broker for funds the carrier was obligated to pay on a claim. Id. at 128. The carrier argued that the broker had breached its fiduciary duty to the carrier by withholding important coverage information. Id. at 127. The Court held that "the relationship [between the carrier and broker] was an ordinary insurance brokerage arrangement. . . . If an implied contract for indemnification were found here, it is possible that every insurance broker would, in effect, become an insurer." Id. at 128. In so ruling, the Court noted that the carrier's request for indemnification was unusual in that the alleged breach of duty was owed solely to the potential indemnitee (the carrier), and not to both the indemnitee and a third party (the carrier and the claimant). Id. at 127. The Court held that part of what made this an "ordinary" contract, and thus one lacking the special relationship required to imply a right of indemnification, was that the broker owed no duty "to the [claimant] that was breached causing injury to the [claimant]. [The carrier] made payments to the [claimant] under the disputed coverage of the liability insurance policy, not because of the breach of some duty owed the [claimant] by the [broker]." Id.

The facts of the case at hand are distinguishable from TransDulles and Marsh & McLennan, and the contractual relationship between the Authority and Carnell presents unique and special factors creating an implied right of indemnification. As an initial matter, the Authority was found liable to IFIC for the retainage amount as an indirect result of Carnell's

original breach of its obligation to pay its subcontractors. That breach created a contractual obligation for Carnell to deliver the unpaid portion of the Contract balance, as well as the retainage funds, to a third-party (IFIC). It is the breach of this duty—Carnell's obligation to relinquish sums to IFIC—that the Authority has been forced to shoulder. As the Court noted in Marsh & McLennan, the putative indemnitor's breach of a duty owed to the same third party against whom the plaintiff seeks to be indemnified is the ordinary set of circumstances in which to find an implied right of indemnity. Id.

Secondly, the Contract between the parties anticipated the possibility that the Authority would have to pay Carnell's subcontractors in the event Carnell did not meet its obligations. The Authority likely required Carnell to obtain a bond, and then incorporated the bond into the Contract, in order protect itself in case of just such an event. The payment applications submitted by Carnell reflected Carnell's obligations to its subcontractors, as well as the Authority's bonding requirement. The applications included the statement:

> The undersigned Contractor certifies that: (1) all previous progress payments received from Owner on account of Work done under the Contract have been applied on account to discharge Contractor's legitimate obligations incurred in connection with Work covered by prior Applications for Payment; (2) title of all Work, materials and equipment incorporated in said Work or otherwise listed in or covered by this Application for Payment will pass to Owner at time of payment free and clear of all Liens, security interest and encumbrances (except such as are covered by a Bond acceptable to Owner indemnifying Owner against any such Liens, security interest or encumbrances); and (3) all Work covered by this Application for Payment is in accordance with the Contract Documents and is not defective.

(Docket No. 50-1, Exhibit 9.)

Carnell also acknowledged in its payment applications that the Authority had retained 5% of the previous payment requests. This continued even after the retainage checks had been deposited directly into Carnell's account. Id. Furthermore, Carnell maintained as late as June

7

14, 2011 that it consented to having the retainage amount paid to IFIC, albeit out of funds from the supposed escrow account.

In other words, the agreement between Carnell and the Authority was not an "ordinary" contract between two parties, such that finding an implied right of indemnification in this case risks turning contractors into insurers of their project owners in every other case. The parties here had contractual obligations that tied them to one another to an unusually close degree. When Carnell failed to make payments to a subcontractor, it triggered a series of obligations between the parties that eventually resulted in the Authority being liable to IFIC for the retainage amount. Moreover, it is only because the retainage funds were wrongly distributed to Carnell that the Authority ever became liable to IFIC. The closeness of the contractual relationship between the parties, as well as the particular facts present in this case, compel the court to find an implied right of indemnification in favor of the Authority against Carnell.

### ii. Unjust Enrichment

In Count Five of the amended third-party complaint, the Authority alleges a claim of unjust enrichment against Carnell. The Authority argues that Carnell has been unjustly enriched by the $85,823.33 retainage amount that was improperly paid to Carnell. Having already determined that the Authority has a right to indemnification against Carnell, the court need not decide the unjust enrichment issue. In any event, the Authority is not entitled to recover under such a theory of relief in this case.

Under Virginia law, to state a claim for unjust enrichment, the plaintiff must show that: (1) a benefit was conferred; (2) the benefitting party knew of the benefit and should reasonably have expected to repay the conferring party for that benefit; and (3) the benefitting party accepted or retained the benefit without paying for its value. Collelo v. Geographic Services,

8

Inc., 283 Va. 56, 83-84 (2012) (citing Schmidt v. Household Finance Corp., 276 Va. 108, 116 (2008)). However, "[w]here a contract governs the relationship of the parties, the equitable remedy of unjust enrichment does not lie." Acorn Structures v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988). Since the parties in this case have a contractual relationship, indeed the kind of close contractual relationship giving rise to an implied right of indemnification, see infra, the Authority cannot seek restitution under a theory of unjust enrichment. See WRH Mortgage, Inc. v. S.A.S. Associates, 214 F.3d 528, 534 (2000) ("Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie."); Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir. 1992) (noting the "well settled" rule that a party may not recover in quantum meruit against another party with whom the plaintiff has an express contract on the same subject in question).

### iii. Declaratory Relief

In Count Six of the amended third-party complaint, the Authority asks the court to grant declaratory relief, ordering that the Authority is not liable to IFIC for any portion of the unpaid contract balance, and that, instead, Carnell, along with First State, is liable for any such amount. The court has already decided the matter of the Authority's direct liability to IFIC, and will not reconsider it here. See International Fidelity Ins. Co. v. Western Virginia Water Authority, No. 7:11-cv-00441, 2012 WL 2357368 (W.D. Va. Sept. 28, 2012) (granting IFIC's motion for summary judgment against the Authority and ordering recovery from the Authority in the amount of $85,823.33). As a result of Part II.B.i. of this opinion, the Authority can seek reimbursement for payments made to IFIC in fulfillment of its court ordered liability.

## III. Conclusion

9

For the above-stated reasons, the court will grant in part and deny in part the Authority's motion for summary judgment against Carnell. Specifically, the court will grant the motion with respect to the Authority's implied indemnification claim, and will deny the motion with respect to the unjust enrichment and declaratory relief claims.

The Clerk is directed to send certified copies of this order to all counsel of record.

**ENTER:** This 30th day of October, 2012.

/s/ Glen Conrad
Chief United States District Judge